IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G & G CLOSED CIRCUIT EVENTS LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LAURA SYLVIA MENDOZA GOVAN,<br>individually and doing business as Kimball's<br>Carnival,<br><br>　　　　Defendant.　　　　　　　　　／ | No. C 13-05488 SI<br><br>**ORDER GRANTING MOTION FOR<br>DEFAULT JUDGMENT** |

On May 23, 2014, the Court held a regularly-noticed hearing on plaintiff's motion for default judgment. Melanie Popper specially appeared for the plaintiff. No one appeared on behalf of defendant. For the reasons set forth below, the Court GRANTS plaintiff's motion for default judgment.

**BACKGROUND**

Plaintiff, the exclusive licensor of rights to exhibit certain closed circuit and pay-per-view sports programming, brought suit against defendant Laura Sylvia Mendoza Govan d/b/a Kimball's Carnival. The complaint alleges that defendant showed a boxing match in her commercial establishment, Kimball's Carnival, without a license. Docket No. 1, Compl. ¶¶ 7-12. Plaintiff's complaint alleges that defendant is liable under the Federal Communications Act, 47 U.S.C. §§ 553 and 605, et seq., for receiving, intercepting and assisting in the receipt or interception of licensed programming, and also alleges the common law tort of conversion and violation of California Business and Professions Code §§ 17200, et seq. *Id.* ¶¶ 13-41. Plaintiff's hired private investigator was present on the evening of the fight, December 1, 2012, in defendant's establishment and saw the program *"Showdown;" Miguel Cotto*

*v. Austin Trout WBA World Light Middleweight Championship Fight* being broadcasted on three televisions. *See* Docket No. 17-3, Poblete Affidavit.

On November 26, 2013, plaintiff filed a complaint against defendant, who never responded. On March 18, 2014, the Clerk entered default against defendant. Docket No. 15.

## DISCUSSION

The Federal Communications Act, 47 U.S.C. § 605 et seq., prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming. The Act allows an aggrieved party to bring a civil action in federal district court and permits that party to elect an award of either statutory or actual damages. *See* 47 U.S.C. § 605(e)(3)(C)(i). The statute allows the Court to award between $1,000 and $10,000 in statutory damages for each violation of section 605 as it considers just. *Id.* at § 605(e)(3)(C)(i)(II). The Court may increase its award by not more than $100,000 when the violation has been "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff's application for default judgment contends that defendant's violation of 47 U.S.C. §§ 605 et seq. was willful. Plaintiff seeks $110,000 for violation of 47 U.S.C. §§ 605(e)(3)(B)(iii) and (c)(ii), and $1,200 for the tort of conversion.

The Court declines to grant plaintiff's request for such exorbitant damages. The allegations in the complaint regarding the monetary amount of damages that should be granted in a default judgment are not controlling, and "the mere assertion that defendants acted willfully is insufficient to justify enhanced damages." *Kingvision Pay–Per–View Ltd. v. Backman*, 102 F. Supp. 1196, 1198 (N.D. Cal. 2000). Courts that have awarded enhanced damage awards due to willful violations of the Communications Act have cited such factors as the repeated violation of the Act, the intent to profit from the violations, and actual profit derived from the violation. *Id.* at 1197-98. Plaintiff's papers state that defendant did not require a cover charge on the evening that she broadcasted the fight. Docket No. 17-1, Pl's Mot. at 11. According to the affidavit of Ms. Poblete, defendant displayed the fight on three television screens within the establishment, and the capacity of defendant's establishment is approximately 150 people. Docket No. 17-3, Poblete Affidavit. However, three separate head counts while Ms. Poblete was present showed the number of patrons present to be 14, 14, and 16 people,

2

1  respectively. *Id.* Thus, the record is unclear on whether the establishment actually profited from the
2  violation. In addition, there is no evidence in the record showing that plaintiff advertised the program
3  prior to the broadcast or that plaintiff has engaged in prior violations.

4  "Courts in this district have considered several cases involving pirating of closed-circuit sports
5  broadcasts and, absent a showing of egregious wrongdoing, generally have awarded damages slightly
6  over the statutory minimum." *Universal Sports Network v. Jimenez*, No. C–02–2768–SC, 2002 WL
7  31109707, at *1 (N.D. Cal. Sept.18, 2002). Therefore the Court finds that an enhanced damage award
8  is not warranted under the statute. Under 47 U.S.C. § 605(e)(3) the Court may award statutory damages
9  between $1,000 and $10,000 for a violation of the Act. The Court awards $2,000 in damages to
10 plaintiff.

11 Plaintiff also requests default judgment on its state law claim of conversion. The Court finds
12 that the statutory damages in the amount of $2,000 sufficiently compensates plaintiff, and this case does
13 not present a set of circumstances where an additional award might be warranted. Further, plaintiff's
14 conversion claim raises what one judge in the Eastern District of California has called "the
15 thought-provoking question of whether an interest in intangible property such as an exclusive license
16 to distribute a broadcast signal is the proper subject of a claim of conversion under California law." *See*
17 *J & J Sports Prods., Inc. v. Hernandez*, No. 09–CV–3389 GEB KJN, 2010 WL 1980186, at *6 n.12
18 (E.D. Cal. May 17, 2010). California state and federal courts have reached varying conclusions.
19 *Compare, e.g.*, *Fremont Indem. Co. v. Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 119 (2007) (noting
20 California courts' traditional refusal to recognize as conversion the unauthorized taking of intangible
21 interests not merged with or reflected in something tangible), *with DIRECTV, Inc. v. Pahnke*, 405 F.
22 Supp. 2d 1182, 1189 (E.D. Cal. 2005) (observing that courts have relaxed the tangibility requirement,
23 and granting summary judgment for conversion of satellite broadcast programming), *and Don King*
24 *Prods./Kingvision v. Lovato*, 911 F. Supp. 419, 423 (N.D. Cal. 1995) (finding that plaintiff's exclusive
25 rights to distribute program in California qualified as right to possession of property under conversion
26 claim).

27
28

**CONCLUSION**

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court GRANTS plaintiff's motion for default judgment. The Court awards plaintiff $2,000 in damages. This Order resolves Docket No. 17.

**IT IS SO ORDERED.**

Dated: May 23, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE